```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
IN RE:
                                    Case Number: 14-71635-AST
HERMAN MILLER
                                    Chapter 13

            Debtor.                 NOTICE OF PRESENTMENT

------------------------------X
```

    **PLEASE TAKE NOTICE** that an Order to Allow the Debtor to enter into a mortgage modification agreement with the first mortgagee, Bayview Loan Servicing shall be submitted to the Court on December 31st, 2014.

    **PLEASE TAKE FURTHER NOTICE** that if a written objection is received by the undersigned and the Court on or before December 29th, 2014 there will be a hearing scheduled by the Court. In the absence of any written objection, the Court may sign the Order without any further hearing or notice.

    **PLEASE TAKE FURTHER NOTICE** that annexed hereto is a copy of the proposed Order and Application reciting the grounds for the relief requested.

```
Dated    Medford, New York         /S RICHARD A. JACOBY
         November 26, 2014         JACOBY & JACOBY
                                   Richard A. Jacoby, Esq.
                                   Attorneys for Debtor
                                   1737 North Ocean Ave
                                   Medford, NY 11763
                                   (631) 289-4600
```

```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
IN RE:
                                        Case Number: 14-71635-AST
HERMAN MILLER,

            Debtor.                     APPLICATION
-------------------------------X
```

**TO THE HONORABLE ALAN S. TRUST, U.S. BANKRUPTCY JUDGE:**

The application of the debtor, HERMAN MILLER, by his attorneys JACOBY & JACOBY, alleges as follows:

1. The debtor herein filed a Chapter 13 Bankruptcy Petition on April 14, 2014.

2. The debtor continues to comply with his confirmed Chapter 13 Plan.

3. The debtor and the first mortgagee Bayview Loan Servicing have negotiated a loan modification agreement whereby the interest rate will be reduced to 2% with deferred arrears. A copy of the proposed modification is annexed hereto.

4. The debtor seeks permission of the Court to enter into this agreement and that the automatic stay be terminated for the sole purpose of allowing the agreement to be executed and recorded.

5. No previous application has been made for the relief requested.

6. Your applicant requests a $600 administrative fee for the preparation of this motion.

**WHEREFORE,** the debtor prays that an Order be entered authorizing the parties to modify the existing first mortgage and for such other and further relief as to the Court may seem just and proper.

Dated:     November 26, 2014
           Medford, New York                    /S RICHARD A JACOBY
                                                RICHARD A. JACOBY

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE:

HERMAN MILLER,

Case Number: 14-71635-AST
Chapter 13

AFFIDAVIT OF SERVICE

DEBTOR.
-----------------------------------------------------------X

STATE OF NEW YORK)
                 ) ss.:
COUNTY OF SUFFOLK)

Rachel Blunck, being duly sworn, deposes and says: Deponent is not a party to the action, is over 18 years of age and resides in Farmingville, New York 11738.

On November 26, 2014 I served a copy of the NOTICE OF MOTION, APPLICATION AND ORDER MODIFYING CHAPTER 13 PLAN on all persons in interest in this Proceeding, by depositing a true copy of same enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, addressed to the following creditors and/or persons on behalf of creditors at the address designated by said attorney or creditor:

Office of the United States Bankruptcy Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY 11722

```
Marianne DeRosa
Standing Chapter 13 Trustee
115 Eileen Way
Suite 105
Syosset, NY 11791
Bayview Financial Loan
Bankruptcy Dept
4425 Ponce De Leon Blvd 5th Fl
Miami, FL 33146       (8297316)
(cr)
BAYVIEW LOAN SERVICING, LLC,
as servicer for ETRADE BANK c/o
4425 PONCE DE LEON BLVD
5TH FLOOR CORAL GABLES, FL 33146    (8398168)
(cr)
BAYVIEW LOAN SERVICING, LLC,
as servicer for ETRADE BANK c/o
4425 PONCE DE LEON BLVD
5TH FLOOR CORAL GABLES, FL 33146    (8397730)
(cr)
BAYVIEW LOAN SERVICING, LLC, as servicer for ETRAD
Fein, Such & Crane, LLP
7 Century Drive, Suite 201
Parsippany, NJ 07054      (8319853)
(ntcapr)
```

BAYVIEW LOAN SERVICING, LLC, as servicer for ETRAD
4425 PONCE DE LEON BLVD
5TH FLOOR CORAL GABLES, FL 33146    (8397728)
(cr)
Ford Motor Credit Company LLC
P O Box 6275
Dearborn, MI 48121    (8330267)
(cr)
IRS
PO Box 21126
Philadelphia, PA 19114-0326    (8297317)
(cr)

(cr)
NYS DEPT OF TAX & FINANCE
BANKRUPTCY SECTION
PO BOX 5300
ALBANY, NY 12205-0300    (8304979)
(cr)
NYS Taxation & Finance
Bankruptcy Unit - TCD
Bldg. 8, Room 455
W.A.Harriman State Campus
Albany, NY 12227    (8297319)
(cr)
NYS Taxation & Finance
Bankruptcy Unit - TCD
Bldg. 8, Room 455
Harriman State Campus
Albany, NY 12227    (8297318)
(cr)
Portfolio Recovery Associates, LLC
c/o Hsbc Bank Nevada, N.a
POB 41067
Norfolk, VA 23541    (8397336)
(cr)
Santander Consumer Usa
Po Box 961245
Ft Worth, TX 76161
Fein, Such, Kahn & Shepard, P.C.
7 Century Drive
Suite 201
Parsippany, NJ 07054



/S RACHEL BLUNCK


26th day of November, 2014
/S NOTARY PUBLIC

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Jennifer McGovern
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1]:             HERMAN   MILLER JR

Lender or Servicer ("Lender"): Bayview Loan Servicing, LLC

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):   01/15/2005

Loan Number:             484449

Property Address ("Property"): 8 SINGINGWOOD HOLBROOK, NY 11741-0000

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT**  - Single Family  - **Fannie Mae / Freddie Mac  UNIFORM INSTRUMENT Form 3157**  V 1.4  **3/09 (rev. 10/10)**    Loan No.: 484449                                                         (Page 1 of 5 pages)

G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**

   If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 12/01/2014.

   A. The new Maturity Date will be: 11/01/2054.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $376,496.68 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $ 106,902.20 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $ 8,996.68 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 09/01/2014, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 269,594.48 . Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 11/01/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/01/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 11/01/2014 | $816.40 | $1,040.66 | $1,857.06 | 12/01/2014 | 60 |
| 6 | 3.000% | 11/01/2019 | $948.47 | Adjust Annually | Adjust Annually | 12/01/2019 | 12 |
| 7-40 | 4.000% | 11/01/2020 | $1,087.87 | Adjust Annually | Adjust Annually | 12/01/2020 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items.". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

   My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender

shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** - Single Family - **Fannie Mae / Freddie Mac UNIFORM INSTRUMENT Form 3157** V 1.4  3/09 (rev. 10/10)    Loan No.: 484449                    *(Page 4 of 5 pages)*

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

IN WITNESS WHEREOF, the Lender and I have executed this Agreement.

**Borrower:**

By: _____ Date: _____
  HERMAN MILLER JR

**Lender:**

By: _____ Date: _____
  Bayview Loan Servicing, LLC

Asset Manager: Diana Moreno
Phone Number: (877) 458-2307  Monday - Friday 9:00 am to 6:00 pm ET
Fax Number:    (786) 470-3593

_____[Space Below This Line For Acknowledgement]_____

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT**  - Single Family  - Fannie Mae / Freddie Mac  **UNIFORM INSTRUMENT Form 3157**  V 1.4  3/09 (rev. 10/10)    Loan No.: 484449                                  (Page 5 of 5 pages)